OPINION OF THE COURT
Gerald Sheindlin, J.
The defendant moves for an order dismissing the indictment against him in the interest of justice, pursuant to CPL 210.40.
The defendant was indicted for the crimes of criminal sale and possession of a controlled substance in the third degree, to wit, cocaine.
Defendant alleges that due to the advanced and fatal nature of the disease from which he is presently suffering, that is, AIDS, and related complicating illnesses, any prosecution or conviction upon this indictment would constitute and result in injustice.
A hearing was held on this motion on December 8, 1986. The defendant called one witness, Dr. Jonathan Allen Cohn. *988 The People rested without calling any witnesses. Based upon the credible evidence and testimony adduced therein, this court makes the following findings of fact and conclusions of law:
FINDINGS OF FACT
The witness, Dr. Jonathan Allen Cohn, a physician duly licensed to practice medicine under the laws of the State of New York, was accepted as an expert witness in infectious diseases as a result of a stipulation between both parties. Dr. Cohn is an attending physician at Bellevue Hospital in the AIDS program. He is also a faculty member at NYU Medical School, in the department of medicine, division of infectious diseases as it concerns AIDS specifically. Additionally, Dr. Cohn has been involved in the treatment of hundreds of patients diagnosed as suffering from the disease of AIDS. Indeed, Dr. Cohn indicated that Bellevue Hospital, with whom he is associated, handles more AIDS patients than any other hospital perhaps in the world.
The facts demonstrate that on July 15, 1986, the defendant was admitted to Bellevue Hospital and shortly thereafter came to the attention of Dr. Cohn, who has been the physician most consistently involved with his care until the present time.
Upon admission, the defendant was diagnosed as suffering from pneumocystis carinii pneumonia, secondary to an immune deficiency virus, which is also known as AIDS. The witness noted that the defendant suffers from the destruction of his immune system to the extent that life-threatening opportunistic infections have invaded his system. Dr. Cohn indicated that in addition to the said pneumonia, the defendant suffers from toxoplasmosis of the brain (two abscesses of the brain revealed by X rays) causing neurological deterioration and occasional stupors, a disease commonly noted in AIDS patients. Additionally, the defendant suffers from invasions of his brain by the AIDS virus itself, diagnosed as AIDS encephalopathy — as demonstrated by CAT scans revealing atrophy of the substance of the brain. Further, there is infection of the peripheral nerves causing severe pain in the defendant’s feet and substantial weakness in his legs, resulting in severe limitation of physical activities. The maximum medically permitted activity for the defendant is to allow him to sit in a chair for one hour per day. The balance of his day is spent in bed in a prone position.
*989 In September 1986, the defendant suffered gram-negative septic shock, resulting from the bacteria Klebsiella, oxidosis, which entered his blood stream and caused his blood pressure to decrease to the extent that shock resulted. He was rushed to the intensive care unit. He developed respiratory failure, requiring artificial ventilation, peritoneal dialysis and artificial kidney treatment. The mitral valve of his heart became infected with Klebsiella bacteria, resulting in a mass of vegetation on the mitral valve. Surgery was considered as the appropriate treatment for this disease, but was ruled out by consulting cardiologist due to the patient’s poor status and fatal prognosis. Antibiotics were used, and the growing nature of the vegetation has been curtailed.
Further, as a result of the peritoneal dialysis, the defendant suffered an infection of the abdominal cavity caused by candida albicans, a yeast infection. The yeast infection entered the blood stream and involved the already infected mitral valve. A diagnosis of candida endocarditis was made. Again, surgery was explored as the appropriate remedy, but rejected. This infection is being controlled by antibiotics.
He has suffered pleural effusions and substantial weight loss.
There are no known cures for the growing AIDS virus noted in the defendant’s lungs, brain and peripheral nerves. The infection in his heart is being treated with antibiotics, however, the most effective treatment, surgery, has been ruled out. There is no cure for the aforementioned diseases, nor is there any medication which would cause a remission.
The prognosis offered is death within three to four months. At the most, the defendant is given five to six months of life. There is no possibility that this defendant could undergo a trial of this action before then.
CONCLUSIONS OF LAW
Pursuant to CPL 210.40, a court may only dismiss charges against a defendant in furtherance of justice where such dismissal is required "as a matter of judicial discretion by the existence of some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant” would result in injustice.
The court is aware of the 10 statutory guidelines set forth by CPL 210.40 and the decisional guidelines (People v Clayton, 41 AD2d 204 [defendant was charged with murder; the trial *990 court, on its own motion, and without a hearing, dismissed the indictment; the Appellate Division reversed for a hearing]; People v Hirsch, 85 AD2d 902 [the defendant cooperated with the prosecution; the District Attorney consented to a dismissal; the trial court denied the defendant’s motion to dismiss; the Appellate Division reversed and granted the motion to dismiss]; People v Mitchell, 64 AD2d 1012 [the defendant was shot by the police and partially paralyzed during the crime; the motion was granted by the trial court; the Appellate Division reversed and reinstated the indictment]; People v Benevento, 59 AD2d 1029 [the defendant suffered from a medical problem, lymph edema; motion granted by the trial court; the Appellate Division reversed and reinstated the indictment]; People v Varela, 106 AD2d 339 [defendant charged with A-l felony; trial court granted the motion on grounds punishment was inhuman; Appellate Division reversed and reinstated the indictment]; People v Freidman, 97 AD2d 738 [weak circumstantial case involving a charge of homicide; trial court granted the motion; Appellate Division reversed and reinstated the indictment]; People v Lasdon, 89 Misc 2d 934 [the defendant suffered from mental illness; motion denied]; People v Burgess, 85 Misc 2d 1057 [the defendant suffered moderate retardation, brain damage and was declared incompetent per CPL art 730; motion granted]; People v Shiv Yan Yee, 114 Misc 2d 515 [severe misconduct by the prosecutor; motion granted]; People v Gray, NYLJ, June 26, 1986, at 18, col 3 [Friedman, J.] [defendant charged with assault in the second degree; defendant suffered from advanced AIDS and died prior to decision on the motion; matter is abated by death, but the court indicates that it would have granted the motion to dismiss]; People v Jacobs, NYLJ, Aug. 22, 1986, at 14, col 1 [Felig, J.] [defendant charged with burglary, suffering from advanced AIDS; motion granted]; People v Johnson, NYLJ, Dec. 30, 1986, at 16, col 5 [Pitaro, J.] [A-l felony possession of drugs; defendant seeks dismissal on grounds mandatory punishment too severe; motion denied]; see also, Law, Social Policy and Contagious Disease: A Symposium on Acquired Immune Deficiency Syndrome [AIDS], 14 Hofstra L Rev 1 [fall 1985]).
The court has examined and considered thoroughly each subsection of CPL 210.40 juxtaposed with the evidence adduced at the hearing. This court is aware that discretion which causes the termination of this prosecution must be *991 exercised sparingly and must be consistent with sound judicial discretion.
It does not appear that the interest of justice would be substantially served by the defendant’s continued prosecution under this indictment. The charges which the defendant faces, criminal sale and possession of a controlled substance in the third degree, to wit, cocaine, are serious, carrying maximum penalties of 25 years.
It is alleged that on July 17, 1985, while acting in concert with another, the defendant did sell a $10 bag of cocaine to an undercover police officer.
The evidence of the defendant’s guilt appears to be overwhelming. Further, it is clear that the selling and purchasing of drugs, which plagues this city, is a serious offense. The court respectfully disagrees with the observations made by the defense that the crime with which the defendant is charged is a victimless one. Indeed, one of the known victims of this crime, the defendant himself, lies helplessly writhing in pain while the dreaded disease of AIDS slowly but surely causes the destruction of his body. It is clear that the abuse of drugs is one of the causes of AIDS (see, Hofstra L Rev, op. cit).
The court notes that the defendant has not been an outstanding, law-abiding citizen. He has several prior convictions, including a prior felony conviction. However, none were for a violent offense. It also appears that the defendant was a simple, small-time vendor of cocaine, supporting his own drug addiction (see, People v Varela, 106 AD2d 339, supra). His prior record is consistent with that observation. Although the defendant is a recidivist, it does not appear that the defendant will ever again be regarded as a threat to either the safety or welfare of the community in light of the fatal prognosis offered by Dr. Cohn. There is no likelihood that the defendant will spend any of his remaining time outside of the confines of his hospital room, whether free or convicted. Moreover, for this court to impose a sentence of incarceration upon the defendant, if convicted, would be an exercise in futility, in view of the prognosis of imminent death, which is undisputed based on the evidence produced at the hearing. No sentence which this court can impose could compare with the severity of the many diseases being painfully and fatally suffered by this defendant. It does not appear to this court that the dismissal of these charges would in any way have any substantial adverse impact upon the confidence of the general public in the administration of the criminal justice system.
*992 One alternative suggested to this court by the People is to dismiss the indictment in the interest of justice, and to give the People the right to reinstate the matter within a certain time period. However, such a conditional dismissal is prohibited by CPL 210.20 (4) which states "the order of dismissal [in the interest of justice] constitutes a bar to any further prosecution of such charge or charges by indictment or otherwise”. Accordingly, the court rejects this suggestion. In addition, the court could merely adjourn this matter for 3 or 4 months. If the defendant dies, the matter would be abated by death (CPL 210.20; see, People v Lindenaur, 46 AD2d 641).
The court recognizes that there are various options available as heretofore set forth. However, the court elects to treat this motion on its merits, and will therefore not adjourn this matter.
The evidence adduced at the hearing has demonstrated to this court in a crystal clear manner that the defendant is literally confined to his death bed.
The uncompromising rampage of the multiple disease processes have condemned this defendant to a painful, imminent death. "Where the rationale for incarceration * * * becomes unjustifiable because of * * * a deadly illness, it becomes imperative to allow the sufferer to live his last days in the best circumstances possible and with dignity and compassion” (People v Gray, NYLJ, June 26, 1986, at 18, cols 3, 5, supra).
The defendant’s motion is granted in its entirety, and the indictment is dismissed.*

 On January 19, 1987 the defendant died of AIDS.